```
                 UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE
```

Christina Lee Fawcett

   v.                                                Civil No. 11-cv-467-JD
                                                          Opinion No. 2013 DNH 041

Michael J. Astrue, Commissioner,
Social Security Administration


O R D E R

Christina Lee Fawcett seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying her application for disability insurance benefits.  She contends that the Administrative Law Judge ("ALJ") erred in failing to obtain vocational expert evidence in light of her non-exertional limitations.  The Commissioner moves to affirm the decision.


Background

During the spring of 2007, Fawcett saw Bronna Eckelman, PA-C, at Seacoast Orthopedics and Sports Medicine for complaints of back and knee pain.  She was diagnosed with morbid obesity and minor degenerative disc disease, but no defect was found in her knees.  She was advised to lose weight and to return to therapy for her back and knee.

Fawcett saw her primary care physician, Dr. Leon Daneschvar, on May 25, 2007, because of knee pain. Dr. Daneschvar noted that Fawcett had recently had a repair of a tear in the meniscus of her left knee. No objective symptoms such as swelling were found. Fawcett was advised to lose weight and continue physical therapy.

Dr. Geppert, of Seacoast Orthopedics and Sports Medicine, noted on June 11, 2007, that an MRI showed a probable recurrence of the meniscal tear and thought re-arthroscopy of the knee would be reasonable. In September, Fawcett had a second arthroscopy with meniscectomy. Physical therapy notes in October show that Fawcett had been improving but was discharged due to inconsistent attendance.

In October of 2007, Fawcett received services at "Community Partners" and was diagnosed with mild depression. The treatment notes state that she was the guardian of her two oldest children because they could not live independently. In addition to her own family, Fawcett also provided child care for two other children, ages two and three.

Dr. Daneschvar referred Fawcett to Dr. James Hay for treatment of her back, leg, and hip pain in early November. Fawcett reported back pain that radiated into her left hip and leg and that the pain was worse when she stood. The examination

showed that her sensation and strength was "preserved" but straight leg raising caused pain. Dr. Hays recommended steroid injections at L4-5. On the same day, Fawcett completed a form about her symptoms and reported that her pain was bad but only required Ibuprofen, that she could take care of herself and lift heavy weights although with pain, that she could only walk with a cane or crutches, and that she could not sit for more than ten minutes. In contrast, however, she also reported that she could do nearly normal activities, except for those requiring energetic participation, and that she could travel for more than two hours.

In November and December of 2007, Fawcett had steroid injections and took Effexor. She reported bad pain in December, that she needed only Ibuprofen, that she could take care of herself, that she could lift heavy weights but with extra pain, that she could walk up to one-quarter mile, that she could not sit or stand for more than a half hour, and that pain had restricted her activities and her ability to travel. In January of 2008, Fawcett had injections into her sacroiliac joints.

Fawcett reported to Dr. Daneschvar in April of 2008 that she had had major mood changes. On examination, Fawcett was fully oriented, cooperative, and pleasant. In December, Dr. Daneschvar assessed Fawcett with a depressive disorder. Fawcett also experienced foot pain, shoulder pain, and back pain.

In August of 2009, a third party who knew Fawcett completed a report on Fawcett's behalf for the state agency. That person stated that she talked with and visited Fawcett daily. During their visits, they watched television, did crafts, baked, and shopped. She also reported that Fawcett cooked, cleaned, drove family members to places, and cared for her pet bird and that Fawcett's husband helped. She said that Fawcett could not go for long walks, had trouble standing in the shower, and that tasks generally took longer. Fawcett also could not do some activities, such as bowling, and could not do some postural activities. Fawcett's report to the agency reflected the same activities. She said that she kept her family of six going and did everything a parent does.

Fawcett reported back pain in September of 2009. A radiographic study showed degenerative disc narrowing at L4-5. In October, Dr. Daneschvar assessed moderate back pain and advised Fawcett to keep exercising.

Dr. Dmitri Dmytruk, D.O., examined Fawcett in November of 2009 for back and hip pain. He found decreased lumbar range of motion and decreased sacroiliac joint mobility. Dr. Dmytruck also found that Fawcett had full strength, hip rotation was normal, leg raising was normal, and sensation was intact. Dr. Dmytruk suggested physical therapy. Dr. Dmytruk also saw Fawcett

in December with similar examination results.  Fawcett's physical therapy notes in January of 2010 showed that she missed six of her nine appointments.

A state agency physician, Dr. Hugh Fairley, completed a physical functional capacity assessment for Fawcett on January 20, 2010.  Dr. Fairley found that Fawcett could lift and carry up to ten pounds frequently, could stand or walk at least two hours in an eight-hour day, that she would sit for six hours, and that she could push or pull without limitations.  He found that she could not climb, although she could occasionally climb ramps and stairs.

Dr. Stephanie Griffin did a mental health evaluation of Fawcett on February 12, 2010.  Fawcett described her daily activities to include errands, watching television, playing on the computer, planning and making meals, and grocery shopping.  She said that she could drive and could manage household finances without difficulty.  She was assessed with mild depression with at most mild effect on her daily activities.  Dr. Edward Martin completed a "Psychiatric Review Technique Form" on February 16, 2010, and concluded that Fawcett did not have a severe mental impairment.

At appointments with Dr. Dmytruk in March and April, Fawcett reported the same back pain, tightness in her left knee and hip,

and fatigue.  Dr. Dmytruk found some tenderness, normal strength, and normal reflexes.  He advised Fawcett to continue with physical therapy.  At her June appointment, Dr. Dmytruk found little tenderness, no significant limitation in range of motion, and brisk and symmetrical reflexes.  Nevertheless, she was encouraged to get a walker.

    Dr. Dmytruk completed a physical residual functional capacity questionnaire on November 10, 2010.  He answered that Fawcett's symptoms could interfere with her ability to do even simple work tasks, that she could walk a block at most, could sit for forty-five minutes and stand for fifteen minutes at a time, could stand or walk for less than two hours in an eight-hour day, and could sit for only four hours in an eight-hour day.  He stated that she would need to be able to change from sitting, standing, and walking at will and would need unscheduled breaks every twenty minutes.  She could lift less than ten pounds and could only occasionally look down, turn her head, or look up.  She could not do postural activities such as twisting, crouching, or stooping.  Dr. Dmytruk also said that Fawcett would likely miss more than four days each month from work.

    Dr. Daneschvar completed a physical residual functional capacity questionnaire on January 21, 2011.  He also answered that Fawcett's symptoms would interfere with her attention and

6

concentration necessary to perform even simple tasks.  He said that Fawcett could not walk as far as a city block, that she could sit or stand for less than twenty minutes at one time, and that she could sit, stand, or walk for less than two hours in an eight-hour day.  He found the same lifting and position limitations as Dr. Dmytruk.  In addition, Dr. Daneschvar stated that Fawcett had limited use of her fingers, arms, and hands and that she would likely miss work one day per month.

In her application for social security benefits, Fawcett alleged an onset of disability on June 30, 2007, when she was forty-one years old.  After her application was denied, she requested a hearing that was held before an ALJ on April 14, 2011.  Fawcett testified at the hearing that she lived with her husband and four children, aged seventeen to twenty-seven.  She explained her medical history and said that she had pain in her back, hips, and shoulders and that she had had physical therapy and injections to treat the pain.  She also testified that she took Vicodin, Flexeril, Tylenol, Ibuprofen, and Naprosyn.

Fawcett said that in 2007 she could do housework more easily and that she weighed 260 pounds in 2007 but weighed 342 pounds at the time of the hearing.  She said that her children were fairly self-sufficient and that she was able to drive and shop with

assistance.  She also said that she had been using a walker for six months.

The ALJ issued a decision on May 6, 2011, concluding that Fawcett was not disabled.  Although the ALJ found severe impairments due to myofascial pain in her back and knees and obesity, he concluded that Fawcett retained the functional capacity to do a full range of sedentary work.  Using the Medical-Vocational Guidelines, the ALJ found that Fawcett was not disabled.  Specifically, the ALJ relied on Rule 201.28 found at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Grid").  When the Appeals Council denied Fawcett's request for review, the ALJ's decision became the final decision of the Commissioner.

## Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Astralis

Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Discussion

In support of her motion to reverse the Commissioner's decision, Fawcett raises a single issue: "The ALJ erred as a matter of law in failing to obtain vocational expert evidence in light of non-exertional limitations."[1] Despite the heading, Fawcett did not develop an argument on that issue but instead focused on evidence of her exertional impairments.[2] In particular, Fawcett faulted the ALJ for failing to rely on the opinions of her treating doctors as to her physical residual functional capacity. The Commissioner moved to affirm the Commissioner's decision, arguing that the ALJ's residual functional capacity is supported by substantial evidence, that the ALJ properly assessed the treating physician opinions, and

---

[1] Fawcett is represented by counsel.

[2] For example, Fawcett states: "The ALJ found the claimant's only severe impairments were 'myofascial pain in the back and knees, and obesity.' . . . The medical evidence of record reveals Plaintiff underwent MRIs of her lumbar spine on several occasions." Pl. Motion, doc. no. 8, at 5. Because the lumbar spine is part of the back, Fawcett's argument does not contradict the ALJ's findings nor does she suggest a non-exertional impairment.

that the ALJ properly relied on the Medical-Vocational Guidelines.

### A.  Use of the Grid

A five-step process is used to evaluate an application for social security benefits.  20 C.F.R. § 404.1520(a)(4).  At step five, the Commissioner bears the burden of providing evidence of specific jobs that the claimant can do.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  If the plaintiff's limitations are only exertional, meaning related to strength, the Commissioner can satisfy the burden of proof by using the Grid, "a chart contained in the Social Security regulations."  Id.; see also Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991). "However, if the [plaintiff] has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust) that restrict his ability to perform jobs he would otherwise be capable of performing, then the Grid is only a framework to guide the decision."  Seavey, 276 F.3d at 5 (internal quotation marks and citations omitted); Heggarty, 947 F.2d at 996 ("If the occupational base is significantly limited by a nonexertional impairment, the [Commissioner] may not rely on the grid to carry

the burden of proving that there are other jobs a claimant can do.").

Fawcett does not identify what non-exertional impairments precluded the ALJ's use of the Grid in her case.  The administrative record shows that at most she had mild depression, which did not affect her ability to function.  During her mental health evaluation, Fawcett stated that she was able to manage her family's needs and household finances and denied any significant problems with attention or memory.

To the extent Fawcett intended to rely on the opinions of Dr. Daneschvar and Dr. Dmytruk to show non-exertional impairments, that theory is not articulated in her motion. Fawcett notes that Dr. Dmytruk stated in the physical residual functional capacity questionnaire that she had symptoms that could interfere with the attention and concentration necessary for simple work tasks on a constant basis.  Fawcett, however, denied having problems with attention or memory.  Although Dr. Daneschvar stated in the physical residual functional capacity questionnaire that Fawcett had limited use of her fingers, arms, and hands, Fawcett's medical records do not support that opinion. As is discussed below, the ALJ did not credit the opinions of Dr. Daneschvar and Dr. Dmytruk because they are not supported by Fawcett's medical records.

Fawcett quotes the standard for relying on the Grid from Devin v. U.S. Soc. Sec. Admin., 2009 WL 1616665, at *4 (D.N.H. June 4, 2009), without explaining how the analysis there is analogous to her case. In Devin, the plaintiff had multiple sclerosis that, among other things, caused her to tire easily. Id. The ALJ, relying on Rule 201.28, found her not disabled. She argued that because of the non-exertional limitation of fatigue, she needed a flexible and self-paced job with an understanding supervisor. Id. at *5. The court cited numerous medical notes from the administrative record that documented the limiting effects the claimant's non-exertional impairment, fatigue, in addition to the exertional limitations of multiple sclerosis and reversed and remanded the decision. Id.

In contrast, Fawcett did not provide a developed argument to support her assertion that the ALJ erred in using Rule 201.28 because of non-exertional impairments. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed."); Johnson v. Astrue, 2011 WL 5553264, at *8 (D.N.H. Nov. 15, 2011). Although the ALJ's use of the Grid is the only issue that Fawcett identified for judicial review, the Commissioner also addressed other issues alluded to in Fawcett's motion. Those matters are resolved as follows.

B.  <u>Treating Doctors' Opinions</u>

Fawcett faults the ALJ for failing to credit the opinions of Dr. Daneschvar and Dr. Dmytruk as to the severity of her impairments.  The ALJ attributes weight to a medical opinion based on the nature of the relationship between the medical source and the claimant, the extent to which the opinion includes supporting information, the consistency of the opinion with the record as a whole, the specialization of the source, and other factors, including the source's understanding of the administrative process and the source's familiarity with the claimant's record.  20 C.F.R. § 404.1527(d); <u>see also</u> SSR 96-2p, 1996 WL 374188 (July 2, 1996).  "[A] treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'"  <u>Ormon v. Astrue</u>, 2012 WL 3871560, at *4 (1st Cir. Sept. 7, 2012) (quoting 20 C.F.R. § 404.1527(d)(2)).

In giving little weight to the opinions of Dr. Daneschvar and Dr. Dmytruk, the ALJ explained that "there is no evidence that supports the opinion that the claimant is unable to sit more than four hours, has limited to no ability to perform the postural and manipulative functions; and would need to change

13

position and take hourly breaks." Admin. Rec. at 19. The ALJ continued, "while the claimant complained of pain, her physical examinations were consistently unremarkable."

Fawcett contends that the record supports her doctors' opinions of her limited ability to sit, do postural activities, and manipulative functions because she used a cane periodically and has recently used a rolling walker with a seat. Fawcett does not explain the relationship between using a cane and a walker and limitations in her ability to sit, do postural activities, and use her hands for manipulation of objects and the relationship is not obvious. Difficulty walking, which might require a cane or a walker, does not suggest a limited ability to sit, bend, or manipulate objects.

Instead, the record supports the ALJ's conclusion that the treating doctors' opinions are not well-supported.

## C. Residual Functional Capacity

The ALJ found that Fawcett retained the ability to perform the full range of sedentary work, which is provided at 20 C.F.R. § 404.1567(a), except that she could not climb or be exposed to

heights.[3]  The ALJ also found that she was limited to tasks that required no more than simple, one or two step instructions.

By way of explanation, the ALJ summarized Fawcett's living situation; her history of back, shoulder, and hip pain; and her obesity.  The ALJ noted that despite Fawcett's view of her limitations, including that she could not lift more than eight pounds and could not stand and walk for more than ten minutes, she was able to maintain the household for her family, which included driving, shopping, cleaning, cooking, and managing the finances.  The ALJ also noted that despite Fawcett's claims of disabling pain, her examination results were essentially normal.

Fawcett disputes her ability to maintain the household, as described by the ALJ, based on her own version of her abilities.  The record, however, supports the ALJ's summary of the evidence and the ALJ's residual functional capacity assessment, which requires that it be affirmed.  See Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987).

---

[3]Fawcett notes the ALJ's statement at the conclusion of the section on residual functional capacity that she was able to do "light exertion work."  Taken in context, that statement is an inadvertent mistake, known as a scrivener's error, and it is clear that the ALJ intended to find that Fawcett was capable of sedentary exertion work.

Conclusion

For the foregoing reasons, the plaintiff's motion to reverse the Commissioner's decision (document no. 8) is denied. The Commissioner's motion to affirm (document no. 11) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

*/s/ Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

March 20, 2013

cc: Robert J. Rabuck, Esquire
    D. Lance Tillinghast, Esquire